## THE STATE OF KANSAS v. SAMUEL L. KING, *as Mayor of the City of Atchison, et al.*

1. MANDAMUS; *Valid Writ; Sufficient Service; Insufficient Defense.* A peremptory writ of mandamus was issued against the mayor and councilmen of the city of Atchison, ordering them to levy a certain tax, which order they neglected and refused to obey. Afterward a rule was issued, requiring them to appear before the court to show cause why they should not be punished as for a contempt. *Held,* That if the court had jurisdiction to issue the writ, and if the writ itself was valid, and the service sufficient, the defendants should have obeyed its mandates, notwithstanding any possible errors that might have been committed by the court or judge in issuing it; and that no mere errors committed by the court or judge in the mandamus proceedings, or in issuing the writ, can be set up by the defendants as a defense for their failure or refusal to obey the commands of the writ.

2. WRIT DISOBEYED; *Contempt, No Purgation of.* The writ of mandamus in this case was issued to compel the defendants to levy a tax to pay a certain judgment. After the defendants had failed and refused to levy the tax as commanded by the writ, and after they had been cited to appear before the court to answer as for a contempt, G. purchased the judgment and obtained an assignment thereof to himself, and then attempted

to relieve the defendants from levying the tax, and also attempted to re-lease them from all liability incurred by reason of their failure and re-fusal to obey the mandates of the writ. *Held*, That while G. had the power to relieve the defendants from levying the tax, he had no power to purge them of their contempt which they had already committed, and no power to transform their previous contempt into a harmless and inno-cent act.

3. WRIT, *Properly Issued and Valid.* Where a writ of mandamus is prop-erly drawn, and at the bottom thereof it contains an allowance of the writ, and then the same is signed officially by the judge of the court and attested by the official signature of the clerk and by the seal of the court, and the writ, at the instance of the plaintiff, is delivered to the sheriff of the county for service, *held*, that the writ is properly issued, and is valid under the statutes of Kansas.

4. MANDAMUS — *Void Service of Writ.* The writ of mandamus in this case was placed in the hands of the sheriff for service, and he served the same upon the mayor and councilmen, who were the defendants, by delivering to each of them a certified copy thereof; and he then returned the original writ to the court, and neither the mayor nor any one of the councilmen ever had the original writ in his possession, and never even saw the same. *Held*, That the service was void; that the service should have been made by delivering to the defendants the original writ, and not a mere copy thereof; and *further held*, that the defendants cannot, under such circum-stances, be held to have committed a contempt by reason of any failure or refusal on their part to obey the mandates of the writ.

## *Appeal from Atchison District Court.*

PROCEEDING for contempt, brought against *Samuel L. King,* as mayor of the city of Atchison, and *Owen E. Seip* and seven others, as councilmen of that city, for a failure or refusal on their part to obey a peremptory writ of mandamus, issued by the judge and the clerk of the district court of Atchison county, ordering them to levy a certain tax. The facts are sufficiently stated in the opinion. November 7, 1881, the court adjudged that each of the defendants, except Robert Wetzel, was guilty of a contempt in neglecting and failing to obey the writ of mandamus, and adjudged that each of them, except Wetzel, should pay a fine of $100 and his proportionate share of the costs of the contempt proceed-ing. A new trial was denied defendants, who appeal from the judgment aforesaid.

*Henry Elliston,* city attorney, and *W. W. Guthrie,* for appellants.

*C. F. Cochran,* county attorney, and *W. A. Johnston,* attorney general, for The State.

The opinion of the court was delivered by

VALENTINE, J.: This was a proceeding for contempt, brought against Samuel L. King, mayor of the city of Atchison, and Owen E. Seip, James Anderson, James Yates, Anton Ostertag, Robert Wetzel, Samuel Stevenson, Charles W. Banning, and Samuel McClellan, councilmen of said city, for a failure or refusal on their part to obey a peremptory writ of mandamus, issued by the judge and clerk of the district court of Atchison county, ordering them to levy a Statement of certain tax. The principal facts of the case facts. are substantially as follows: On September 23, 1881, a peremptory writ of mandamus was allowed and issued by the judge and clerk of the district court of Atchison county, commanding the mayor and councilmen of the city of Atchison, and each of them, to meet on or before the 3d day of October, 1881, and then and there in their official capacity to levy a tax on the taxable property in said city sufficient to pay a certain judgment which had previously been rendered in favor of Benjamin Carley and against the city of Atchison, for the sum of $225, and costs taxed at $3.70, and to cause such tax to be collected, and when collected, to pay the same in satisfaction of said judgment. The mayor and councilmen were each named specifically in said writ, and the writ was allowed and signed by the judge, and attested by the clerk. This writ was placed in the hands of William Blair, sheriff of Atchison county, for service, and he served the same by delivering a certified copy thereof to each of the defendants, except Wetzel; and he served the same on Wetzel by leaving a certified copy of the writ at Wetzel's usual place of residence. Neither the mayor nor any one of the councilmen ever had the original

39 — 29 KAS.

writ in his possession, and never even saw the same. On October 3, 1881, the mayor and council met in regular session, all being present, and transacted some business, but failed and refused to take any steps toward the levy or collection of the tax which they were commanded to levy on that day, by said writ of mandamus. Afterward, and on October 7, 1881, a rule was issued against the mayor and councilmen, requiring them, and each of them, to appear before the judge of the district court, on the first day of the next term of the court, to be held on November 7, 1881, at the court house in Atchison county, then and there to show cause, if any they had, why they should not be punished as for a contempt in failing to obey the commands of the said writ of mandamus. On November 5, 1881, two days prior to the day set for the hearing of the proceeding for the supposed contempt, W. W. Guthrie purchased the said judgment against the city of Atchison, and took an assignment thereof to himself; and on the 7th day of the same month, and before the hearing of the contempt proceedings was commenced, he appeared in open court, and exhibited the assignment to the court, and moved the court that all further proceedings against the mayor and councilmen of the city of Atchison should cease, and that they, and each of them, should be no longer held to answer for any neglect or refusal on their part to levy taxes, or to perform any other act looking to the payment or satisfaction of said judgment. This motion was refused and disallowed by the court; and thereupon the defendants filed their motion to quash the said writ of mandamus, for various reasons, which motion was overruled by the court, and the defendants excepted. Immediately thereafter the defendants filed their return to said rule to show cause why they should not be punished as for a contempt, which the court, upon consideration, held to be insufficient, and adjudged that each of the defendants, except Wetzel, was guilty of a contempt in neglecting and failing to obey the writ of mandamus, and adjudged that each of the defendants, except Wetzel, should pay a fine of $100

and his proportionate share of the costs of the contempt proceeding; to all of which the defendants, except Wetzel, duly excepted, and within three days thereafter they moved for a new trial, upon various grounds, which motion the court overruled, and the defendants duly excepted; and they now appeal to this court, and ask for a reversal of the said judgment imposing said fine and costs upon them.

The defendants raise many questions in this court; but the most of them, however, can be considered only upon a petition in error in the mandamus case. If the judge of the court below had jurisdiction to issue the writ of mandamus, (and that he had we suppose is not questioned,) and if the writ itself was valid, and the service sufficient, then the defendants undoubtedly committed a contempt of the court on October 3, 1881, by refusing to take any steps toward the levy or the collection of the tax which they were commanded to levy on that day, by the writ of mandamus; and it can make no possible difference how many errors the judge may have committed in the mandamus proceeding, or what may have transpired after the contempt was committed. So far as this appeal is concerned, it may be admitted that the judge of the court below committed numerous errors in the mandamus proceeding; and that it was manifestly erroneous for him and the clerk to issue said writ; and it may also be admitted, that after Guthrie purchased the Carley judgment he had the absolute control of the mandamus proceedings, and had a right to have the same stayed or dismissed, if he chose, and had the right to relieve the defendants from levying the said tax, or from taking any steps toward the levying or collecting of the same; and yet all this would not be any defense to the contempt proceeding. It might, perhaps, be shown in mitigation of the punishment, but could not be shown as a defense to the action. Unless the writ of mandamus or the service thereof was absolutely void, it was the duty of the defendants, on the 3d day of October, 1881, to obey the writ, and no mere errors in issuing it could have the force or

<div style="margin-note">1. Mandamus; valid writ; sufficient service; insufficient defense.</div>

2. Writ dis-
obeyed; con-
tempt, no
purgation of.

effect, after the contempt was really committed, to transform their contemptuous conduct in disobeying the writ into harmless or innocent acts. No act of Carley, the original judgment creditor, or of Guthrie, to whom the judgment was assigned, could purge the defendants of their previous contempt, or transform their previous contempt into some innocent or harmless act, or relieve them from the liability which they assumed when they committed the contempt. We assume, for the purposes of this case, that when Guthrie purchased the judgment that he then obtained full power and control over the mandamus proceedings, and that he then had power to stop the proceedings where they were, and to relieve the defendants from levying any tax to pay the Carley judgment, and to relieve them and the city of Atchison from all liability to himself and to Carley incurred by reason of their failure to levy the said tax; and indeed to release the judgment absolutely, and to release all other liabilities which the defendants or the city of Atchison might have placed themselves under, either to Guthrie or to Carley, in connection with the said judgment or with reference to the mandamus proceedings; but he had no power to release the defendants from their liability to the state of Kansas for the contempt which they had, in fact, committed more than a month before Guthrie purchased the judgment. Their refusal to obey the writ of mandamus was an offense against the state of Kansas and the dignity of the court, which neither Guthrie nor Carley could pardon or excuse.

With these preliminaries, we now come to the questions, whether the writ of mandamus was valid, or not, and whether the service of the same upon the defendants was valid, or not; and these are really the only questions of any importance in the case, for if these questions were answered in the affirmative, the judgment of the court below punishing the defendants as for a contempt should be affirmed; but if either of them should be answered in the negative, then the judgment should be reversed. If the court below did not err in holding that

both the writ of mandamus and the service of the same were valid, then no substantial error was committed in the case.

We shall now proceed to consider these questions.

The statutes to be considered with reference to these questions are as follows: Section 688 of the civil code as amended in 1870, and §§ 690, 693, 699 and 709 of the civil code as adopted in 1868, as follows:

"SEC. 688. The writ of mandamus may be issued by the supreme court, or the district court, or any justice or judge thereof, during term or at chambers, to any inferior tribunal, corporation, board, or person, to compel," etc.

"SEC. 690. The writ is either alternative, or peremptory. The alternative writ must state, concisely, the facts showing the obligation of the defendant to perform the act and his omission to perform it, and command him that immediately upon receipt of the writ, or at some other specified time, he do the act required to be performed, or show cause before the court whence the writ issued, at a specified time and place, why he has not done so; and that he then and there return the writ with his certificate of having done as he is commanded. The peremptory writ must be in a similar form, except that the words requiring the defendant to show cause why he has not done as commanded must be omitted."

"SEC. 693. The allowance of the writ must be indorsed thereon, signed by the judge of the court granting it, and the writ must be served personally upon the defendant. If the defendant, duly served, neglect to return the same, he shall be proceeded against as for a contempt."

"SEC. 699. Whenever a peremptory writ of mandamus is directed to any public officer, body, or board, commanding the performance of any public duty specially enjoined by law, if it appear to the court that such officer or any member of such body or board, has, without just excuse, refused or neglected to perform the duty so enjoined, the court may impose a fine, not exceeding five hundred dollars, upon every such officer or member of such body or board. Such fine, when collected, shall be paid into the treasury of the county where the duty ought to have been performed; and the payment thereof is a bar to an action for any penalty incurred by such officer or member of such body or board, by reason of his refusal or neglect to perform the duty so enjoined."

"SEC. 709. All writs and orders for provisional remedies

and process of every kind shall be issued by the clerks of the several courts, upon a precipe filed with the clerk demanding the same."

We suppose it will be admitted that the judge and clerk of the court below had jurisdiction to issue the writ of mandamus in this case, for there is not the slightest ground for claiming otherwise; but it is claimed that the writ was not legally issued, because at the bottom of the writ the allowance thereof was written thereon, and the same signed by the judge and attested by the clerk in the following form, to wit:

"The right of the plaintiff to require of the defendants the performance of the duties specified in the foregoing writ being clear, and it being apparent that no valid excuse can be given for not performing them, the foregoing peremptory writ of mandamus is allowed.  The defendants, being present by their attorney, Henry Elliston, excepting thereto.

"Done at chambers, in Atchison, Atchison county, Kansas, this 23d day of September, 1881.

<div style="text-align:right">D. MARTIN, <em>Dist. Judge.</em></div>

Attest:        W. W. CHURCH,
(Seal.)            *Clerk of the District Court.*

We think the writ was valid.  It was really issued by 3. Writ properly issued, and valid. both the judge and the clerk, although the allowance thereof was by the judge alone, as provided by the statute.

The next question is, whether the service of the writ upon the defendants was valid, or not.  This question must be answered in the negative.  The statute contemplates that the 4. Mandamus; void service of writ. writ shall be served by delivering the writ itself to the defendant, and it is the writ itself which must be returned by the defendant to the court.  No mere copy of the writ is sufficient in either case.  This was also the rule at common law.  Section 690 of the civil code provides that the writ shall command the defendant, "that immediately upon receipt of *the writ,* or at some other specified time," he shall obey its mandates, "and that he then and there return *the writ* with his certificate of having done as he is commanded."  Of course the defendant could not be in

"receipt of the writ" unless it was delivered to him; nor could he "return the writ" unless he had previously received the same. He could not "return the writ" if he had never received anything but a mere copy of the same. Section 693 of the civil code provides that "*the writ must* be served *personally* upon the defendant; if the defendant, duly served, neglect to *return the same,* he shall be proceeded against as for a contempt." Now the defendant could not "return the writ" if he had never seen the same nor had it in his possession. He could not "return the same" if he had never had anything but a mere copy of "the same" in his possession. And while the section provides that the defendant may be proceeded against as for a contempt if he neglect on his part to return the original writ, yet it does not provide for any proceeding against him, or for any punishment, for any failure or neglect on his part to return a copy of the original writ. And while the defendant may commit a contempt by failing to obey the mandates of the original writ, he could not under any statutes of Kansas be held to be in contempt for failing to obey the mandates of a mere copy of the original writ. We think it therefore follows from the statutes of Kansas, that if the original writ is not delivered personally to the defendant, the service of the same upon him is void. It is probably true, where the defendant in an action of mandamus is a board of persons, that a service may be made by delivering the original writ to the chairman or principal officer of such board, and delivering copies of the writ to the other members of the board; for in such case the chairman or principal officer represents the board, and could make a return of the writ for the entire board. There are cases supporting such a view. But it has been said, however, in some of such cases, that all the members of the board should be permitted to see the original writ. It has also been held in cases of municipal corporations, that the service may be made by delivering the original writ "to the mayor, as the most visible part of the corporation." (*The Queen v. Chapman,* 6 Mod. [Eng.] 152.) But where there are several separate and independent defendants,

we think an original writ should be served upon each one of them. The original writ is better evidence of what the de- fendants are required to do than any mere copy can possibly be. The original writ is signed by both the judge and the clerk of the court issuing the same, and it is attested by the seal of the court, and it carries with it, upon its face, the highest evidence of its own force, validity, and power. No mere copy can carry with it such high evidence. The writ may be served by any person, by a mere delivery of the same to the defendant; and the defendant is bound to know from the writ itself that it is authentic and that he is bound to obey its mandates. It cannot be so with a mere copy of the writ. The defendant cannot know from a mere copy of the writ that it is a genuine copy of the original, or that there is any genuine original, or that he is bound to obey its mandates under penalty of being prosecuted and punished as for a contempt; for a mere copy cannot be authenticated as the original writ always is; and there is no provision of the statutes authorizing the giving of a copy, or the certifying of the same; and no provision of the statutes authorizing any such service; and there is no provision of the statutes requiring the defendant to obey the mandates of a mere copy of any writ of mandamus.

The rules of the common law with respect to the service and return of writs of mandamus, we think are substantially the same as are the rules fixed by the statutes of Kansas. In the present case, the original writ was not delivered to any one of the defendants, and no one of them ever saw the same. Now this, we think, rendered the service void. In Wisconsin, where a peremptory writ of mandamus was issued against a town board, and the sheriff served copies only of the writ upon the members of the board, and returned the original writ to the court, it was held that such service was void. (*State v. Mineral Point*, 22 Wis. 396.) We think the same thing must be held in Kansas. (See also Moses on Mandamus, 225.) Where there are several separate and independent defendants, it would probably be better to issue an original writ

for each defendant. In Kansas, an alternative writ of mandamus answers the purpose both of a summons and of a pleading. So far as it answers the purpose of a summons, the defendant may waive the formal service thereof by voluntarily appearing in the action and answering thereto; the peremptory writ answers the purpose of an execution, and the defendant may waive its formal service by voluntarily performing its mandates. But until the writ is served, and served in such a manner that the service could not be held to be void, the defendant could not be held to have committed a contempt by any failure or refusal to obey its mandates.

We think the service of the writ of mandamus in the present case was void, and therefore that the defendants did not commit any contempt by refusing to obey the mandates of such writ.

The judgment of the court below will be reversed, and cause remanded for further proceedings.

All the Justices concurring.